607 S.E.2d 78

**The STATE, Respondent,**

v.

**Freddie Eugene OWENS, Appellant.**

**No. 25916.**

Supreme Court of South Carolina.

Heard Nov. 16, 2004.

Decided Dec. 20, 2004.

Acting Chief Attorney Joseph L. Savitz, III, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia, and Robert M. Ariail, of Greenville, for Respondent.

Justice WALLER:

Appellant, Freddie Eugene Owens, was convicted of murder, armed robbery, use of a firearm in the commission of a violent crime, and conspiracy to commit armed robbery; he was sentenced to death. This Court affirmed the murder and armed robbery convictions,[1] but remanded the matter to the circuit court for a new sentencing proceeding due to counsel's inability to fully investigate a statement made by Owens the day before his sentencing proceeding.[2] *State v. Owens*, 346 S.C. 637, 552 S.E.2d 745 (2001). At resentencing, Owens elected a bench trial. After a hearing, the trial judge sentenced him to death.

## FACTS[3]

At the resentencing proceeding, Owens indicated to the trial court that he did not wish to testify. The court advised Owens that if he had a jury trial, the jury would be required to unanimously agree on a sentence of death, repeatedly telling him that it only took one vote to get a sentence of life. The court went on to advise Owens as follows:

I want to tell you that it's not uncommon, and I've had it happen, where a potential juror will come in and lie to me about getting on the jury. Some of those individuals will come in and lie to me about getting on the jury. Some of

---

1. The possession of a weapon during commission of a violent crime conviction was vacated pursuant to S.C.Code Ann. § 16–23–490(A) (Supp.2000) (five-year sentence does not apply in cases where death penalty or life sentence without parole is imposed for violent crime).

2. On January 15, 1999, the day Owens was convicted of the murder in question, he was taken back to his jail cell for the night to allow the statutory 24–hour waiting period before his sentencing. That evening, Owens' cellmate, Christopher Lee, was brutally murdered in his cell; Owens confessed to the murder and gave a very incriminating statement to police. *Owens I*, 346 S.C. at 655–657, 552 S.E.2d at 754–755.

3. The charges in this case stem from the November 1, 1997, armed robbery of a Speedway convenience store and the fatal shooting of the store's clerk, Irene Graves.

those individuals will claim to support the death penalty in hopes of getting on the jury. Yes [sic], in reality such a juror is opposed to the death penalty and would never vote for the death penalty. And they, when they're selected and the time comes, they refuse to vote for the death penalty and will only vote for life. That's happened....

Owens then indicated his belief that the opposite could also happen, to which the trial judge responded, "I guess in theory there's a chance for that to happen. I can tell you what I have described to you is more common, and in fact, has happened. And I just leave it at that. It has actually happened. And I'm just being as honest with you as I can."

After a bench trial, Owens was sentenced to death. He now appeals.

## ISSUE

Do the trial court's comments concerning Owens' waiver of his right to a jury trial constitute reversible error?

## DISCUSSION

Owens asserts the trial court's comments concerning capital sentencing juries were fundamentally erroneous, requiring reversal. We agree.

In *State v. Gunter*, 286 S.C. 556, 335 S.E.2d 542 (1985), the defendant argued the trial court had coerced him into testifying by advising him that, if he did not testify, the jury would hold it against him. 286 S.C. at 558, 335 S.E.2d at 543. Although the trial judge advised Gunter he would instruct the jury that it could not hold his failure to testify against him, Gunter was repeatedly told that the jury was nonetheless likely to do so. *Id.* On appeal, this Court held that although a trial judge should establish the voluntariness of a defendant's decision not to testify, "[t]his inquiry must be limited in scope, and it is impermissible for the judge to express his opinion, although the opinion may be based upon his experience and best judgment.... How a jury may or may not view a defendant's decision not to testify is not an appropriate subject for comment by the court." 286 S.C. at 559, 335 S.E.2d at

543. We found the trial court's comments constituted reversible error.

Thereafter, this Court decided *State v. Pierce*, 289 S.C. 430, 346 S.E.2d 707 (1986), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991), and *State v. Cooper*, 291 S.C. 332, 353 S.E.2d 441 (1986), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). In *Pierce*, the trial judge had similarly instructed criminal defendants that if they failed to testify, the jury would use it against them. Notably, however, the defendant in *Pierce* had already made up his mind not to testify, and did not change his decision after the trial court's comments. The state argued that, because Pierce had elected not to testify, he had not been influenced by the trial court's erroneous comments, such that there was no prejudice. We rejected the state's contention, stating, "[a]lthough Pierce did not testify, he had the right to make that decision free of any influence or coercion from the trial judge. It is virtually impossible to determine the actual effect the judge's improper statements had on Pierce." *Pierce*, 289 S.C. at 434, 346 S.E.2d at 710. The facts in *Cooper* are virtually identical to *Pierce*. *See Cooper* 291 S.C. at 336–337, 353 S.E.2d at 443.

Subsequently, in *Butler v. State*, 302 S.C. 466, 397 S.E.2d 87 (1990), we granted a writ of habeas corpus based upon identical comments. There, although we specifically noted that neither of the defendants in *Cooper* or *Pierce* had been swayed by the trial court's comments, we nonetheless declined to find harmless error, stating that "[in *Pierce* and *Cooper*], [w]e rejected the suggestion that these types of comments could **ever** constitute harmless error, noting, '[t]he comments by the judge were erroneous, improper and contrary to South Carolina law.'" *Butler*, 302 S.C. at 467, 397 S.E.2d at 87 (emphasis added).

As in those cases, the comments here were improper and contrary to South Carolina law. Although the trial court must strive to ensure that a criminal defendant's waiver of the right of a jury trial is knowing and voluntary, the court should never inject its personal opinion into that decision. The comments here impermissibly did so. Accordingly, Owens'

sentence is reversed and the matter remanded for a new sentencing proceeding.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, BURNETT, JJ., and Acting Justice A. VICTOR RAWL, concur.